1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11                            ----oo0oo----

12  STARBUCKS CORPORATION, a           CIV. NO. 2:13-1754 WBS CKD
    corporation,
13                                     MEMORANDUM AND ORDER RE: MOTION
                 Plaintiff,            TO DISMISS CROSS-COMPLAINT
14
         v.
15
    AMCOR PACKAGING DISTRIBUTION,
16  et al.,

17               Defendants.

18

19                            ----oo0oo----

20          Plaintiff Starbucks Corporation ("Starbucks") filed

21  this case against defendants Amcor Packaging Distribution, Amcor

22  Packaging (USA), Inc. (collectively "Amcor"), and Pallets

23  Unlimited after discovering mold on its coffee bags, coffee, and

24  several wooden shipping pallets provided to Starbucks by

25  defendants.  (Compl. ¶ 9 (Docket No. 1).)  Starbucks alleges that

26  defendants supplied it with defective pallets that caused the

27  mold.  (Id.)  Pallets Unlimited and Amcor filed cross-claims

28  against each other, (Amcor Cross-cl. (Docket No. 14); Pallets

                                   1

1    Cross-cl. (Docket No. 15)), and Pallets Unlimited later filed a

2    "cross-claim"[1] against third-party defendant Ozburn-Hessey

3    Logistics ("OHL").  (Pallets Compl. (Docket No. 25).)  OHL now

4    moves to dismiss the claims against it.

5    I.    Factual and Procedural History

6         Amcor allegedly sold Starbucks 9,480 wooden pallets,

7    used to store and transport almost 70,000 bags of unroasted

8    Starbucks coffee beans.  (Compl. ¶¶ 8-9.)  Pallets Unlimited was

9    hired by Amcor to "manufacture[], assemble[] or provide" some or

10   all of the pallets.  (Id. ¶ 8.)  Under a separate contract,

11   Starbucks also hired OHL to provide warehouse services for

12   Starbucks products.  (Pallets Compl. ¶ 11.)

13        Starbucks alleges the pallets used to transport and

14   store its beans were defective because they did not meet the

15   specifications in Starbucks's contract with Amcor, and "as a

16   result, excessive moisture was present in the pallets, which

17   caused mold to develop in pallets and the coffee bags and

18   [coffee], which were in direct contact with the faulty pallets."

19   (Compl. ¶ 9.)  Starbucks asserts claims against Amcor and Pallets

20   Unlimited for strict product liability, breach of warranty, and

21   negligence, as well as a claim against Amcor for breach of

22   _____

23        [1]   Because OHL was not previously a party to the case and
     its liability is allegedly derivative of Pallets Unlimited's,
24   this pleading is more accurately called a "third-party
     complaint."  See Fed. R. Civ. P. 14(a)(1) ("A defending party
25   may, as a third-party plaintiff, serve a summons and complaint on
     a nonparty who is or may be liable to it for all or part of the
26   claim against it."); see also United States v. One 1977 Mercedes
     Benz, 708 F.2d 444, 452 (9th Cir. 1983) ("[A] third-party claim
27   may be asserted only when the third party's liability is in some
     way dependent on the outcome of the main claim and the third
28   party's liability is secondary or derivative.").

1  contract.  (Id. ¶¶ 13-38.)

2          On July 22, 2014, Pallets Unlimited filed a third-party

3  complaint against OHL alleging that it delivered wooden pallets

4  to OHL's warehouse starting in December 21, 2011, and at that

5  time, none of the pallets contained mold.  (Pallets Compl. ¶¶ 8-

6  9.)  OHL then stored the pallets at its facility until sending

7  them out to various locations determined by Starbucks.  (Id. ¶

8  13)  During this time, OHL was allegedly responsible for ensuring

9  they were "properly stored and protected from the elements such

10  that they would not develop any mold."  (Id.)  Pallets Unlimited

11  alleges that, because "the pallets and coffee beans at issue were

12  stored in the sole possession of OHL, . . . the mold likely

13  developed as a result of the storage conditions at the

14  [warehouse]."  (Id. ¶ 14.)

15          Based on these allegations, Pallets Unlimited brings

16  four claims against OHL: (1) full indemnification, (2) partial

17  indemnification, (3) negligence, and (4) declaratory relief.

18  (Id. ¶¶ 15-27.)  OHL moves to dismiss all four claims pursuant to

19  Federal Rule of Civil Procedure 12(b)(6) for failure to state a

20  claim upon which relief can be granted.

21  II.  Legal Standard

22          On a motion to dismiss for failure to state a claim

23  under Rule 12(b)(6), the court must accept the allegations in the

24  pleadings as true and draw all reasonable inferences in favor of

25  the third-party plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232,

26  236 (1974), overruled on other grounds by Davis v. Scherer, 468

27  U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To

28  survive a motion to dismiss, a plaintiff must plead "only enough

1   facts to state a claim to relief that is plausible on its face."

2   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This

3   "plausibility standard," however, "asks for more than a sheer

4   possibility that a defendant has acted unlawfully," and where a

5   plaintiff pleads facts that are "merely consistent with a

6   defendant's liability," it "stops short of the line between

7   possibility and plausibility."  Ashcroft v. Iqbal, 556 U.S. 662,

8   678 (2009) (quoting Twombly, 550 U.S. at 557).

9   III. Pallets Unlimited's Claims for Full or Partial Indemnity

10          A.   Judicial Notice of the "OHL Agreement"

11          In general, a court may not consider items outside the

12   pleadings when deciding a motion to dismiss, but it may consider

13   items of which it can take judicial notice.  Barron v. Reich, 13

14   F.3d 1370, 1377 (9th Cir. 1994).  "A district court ruling on a

15   motion to dismiss may consider a document the authenticity of

16   which is not contested, and upon which the plaintiff's complaint

17   necessarily relies."  Parrino v. FHP, Inc., 146 F.3d 699, 706

18   (9th Cir. 1998), superseded by statute on other grounds as stated

19   in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 681-82 (9th

20   Cir. 2006).  The policy underlying this rule seeks to

21   "[p]revent[] plaintiffs from surviving a Rule 12(b)(6) motion by

22   deliberately omitting references to documents upon which their

23   claims are based."  Parrino, 146 F.3d at 706.

24          Through the "incorporation by reference" doctrine, the

25   court may also "take into account documents . . . alleged in a

26   complaint and whose authenticity no party questions, but which

27   are not physically attached to the [plaintiff's] pleading . . .

28   even though the plaintiff does not explicitly allege the contents

1   of that document in the complaint."   Knievel v. ESPN, 393 F.3d

2   1068, 1076 (9th Cir. 2005) (quotation marks and citations

3   omitted).   "A court 'may treat such a document as part of the

4   complaint, and thus may assume that its contents are true for

5   purposes of a motion to dismiss under Rule 12(b)(6).'"   Davis v.

6   HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160-61 (9th Cir. 2012)

7   (quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.

8   2003)).

9         In its third-party complaint, Pallets Unlimited alleges

10  that "OHL had a contract with [Starbucks] whereby OHL agreed to

11  store the wooden pallets at issue . . . at the [warehouse]."

12  (Pallets Compl. ¶ 11.)   OHL has provided the court with a copy of

13  the contract ("OHL Agreement") which it represents contains the

14  terms by which "OHL provided warehouse services to Starbucks"

15  regarding the pallets and coffee at issue.   (OHL's Mem. at 3

16  (Docket No. 29); OHL's Req. for Judicial Notice Ex. 5 (Docket No.

17  30-5)).   OHL represents this is the contract to which Pallets

18  Unlimited's pleading refers.   (OHL's Mem. at 3.)

19        OHL and Starbucks both agree that the OHL Agreement is

20  authentic.   In fact, they have provided the court with two

21  declarations affirming its authenticity: one from Frank Eichler,

22  chief administrative officer and general counsel of OHL, (OHL's

23  Reply Ex. 1, Eichler Decl. (Docket No. 40-1)), and one from Jeff

24  Ferrell, sourcing category manager at Starbucks, (Starbucks's

25  Response Ex. 1, Ferrell Decl. (Docket No. 42-1)).   Moreover,

26  Starbucks has requested that the court file the OHL Agreement

27  under seal, citing "proprietary, commercially sensitive and

28  private information regarding Starbucks vendor relationship,

1  facilities' locations, operational specifications and procedures,

2  costs, metrics, pricing, business practices and other similar

3  proprietary information relating to Starbucks warehousing and

4  service requirements."  This request further suggests that the

5  Agreement is what it purports to be.

6          Nevertheless, despite the fact that its pleading makes

7  reference to "a contract . . . whereby OHL agreed to store the

8  wooden pallets" in its pleading, Pallets Unlimited does not agree

9  that the document which has been provided is the relevant

10  contract. (See Pallets's Opp'n at 4-7 (Docket No. 38).)  Pallets

11  Unlimited argues that its allegation was a "speculative

12  reference" based only upon "information and belief" that "a

13  contract" existed. (Id. at 4-6.)  At the time of pleading, it

14  argues, "Pallets Unlimited was unaware of any actual contract

15  between OHL and Starbucks, much less the specific OHL Agreement

16  sought to be relied upon." (Id. at 5.)  None of the terms of the

17  OHL Agreement were quoted or paraphrased specifically in the

18  pleading, however, and Pallets Unlimited asserts that its limited

19  reference to "a contract" did not sufficiently refer to this

20  contract to consider it incorporated by reference.[2] (Id. at 6.)

21          Accordingly, although Pallets Unlimited has offered no

22  _____

23          [2]     Pallets Unlimited also offers several "procedural and
    evidentiary objections" to considering the OHL Agreement. (Id.
24  at 4, 6 n.1 (citing Fed. Rs. Evid. 401, 402, 803, 901, 902).)
    Presumably, these objections would become relevant if the court
25  were to convert OHL's motion to dismiss into one for summary
    judgment. See Parrino, 146 F.3d at 706 n.4 ("[W]here a defendant
26  attaches extrinsic evidence to a Rule 12(b)(6) motion, the court
    ordinarily must convert that motion into one for summary judgment
27  under Rule 56 to give the plaintiff an opportunity to respond.").
    The court sees no reason to convert OHL's motion, and thus, does
28  not address these objections further.

1  concrete reason for doubting its authenticity, the parties'

2  disagreement regarding whether the OHL Agreement applies to the

3  facts alleged prevents the court from considering it for purposes

4  of this motion to dismiss.  See Knievel, 393 F.3d at 1076

5  (allowing consideration of documents "whose authenticity no party

6  questions" on a motion to dismiss); Parrino, 146 F.3d at 706

7  (same).  The court will thus not consider the OHL Agreement.

8       B.    Equitable Indemnity

9       Under California law, indemnity may be either "express

10  indemnity," which refers to an express contract term providing

11  for indemnification, or "equitable indemnity," which embraces

12  traditional equitable indemnity and implied contractual

13  indemnity.  Prince v. Pac. Gas & Elec. Co., 45 Cal. 4th 1151,

14  1157-60 (2009) (reviewing the historical forms of indemnity under

15  California law). Pallets Unlimited does not allege the existence

16  of a contract between it and OHL, leaving only the possibility of

17  equitable indemnity.  See id.

18       Equitable indemnity allows a defendant to "seek

19  apportionment of loss between the wrongdoers in proportion to

20  their relative culpability."  Gem Developers v. Hallcraft Homes

21  of San Diego, Inc., 213 Cal. App. 3d 419, 426 (4th Dist. 1989).

22  To state a claim for equitable indemnity, plaintiff must make:

23  "(1) a showing of fault on the part of the indemnitor and (2)

24  resulting damages to the indemnitee for which the indemnitor is

25  . . . equitably responsible."  Bailey v. Safeway, Inc., 199 Cal.

26  App. 4th 206, 217 (1st Dist. 2011).

27       Crucially, California law requires that, "[w]ith

28  limited exception, there must be some basis for tort liability

7

against the proposed indemnitor . . . generally based on a duty owed to the underlying plaintiff."[3]  BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc., 119 Cal. App. 4th 848, 852-53 (4th Dist. 2004) ("Without any action sounding in tort, there is no basis for a finding of potential joint and several liability . . . thereby precluding a claim for equitable indemnity."); see Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp., 143 Cal. App. 4th 1036, 1040-41 (1st Dist. 2006) ("The question is whether, with respect to the claims analysis, [the indemnitor] owed [the plaintiff] a duty of care sounding in tort.").  This rule appears to follow from two principles. First, equitable indemnity requires two or more parties to share a "joint legal obligation" or become "jointly or severally liable" to the same plaintiff.  See Prince, 5 Cal. 4th at 1158; Stop Loss, 143 Cal. App. 4th at 1040.  Second, "California law does not permit equitable apportionment of damages for breach of contract . . . ."  Stop Loss, 143 Cal. App. 4th at 1041 n.2.

Ordinary breach of contract, without something more, will thus not support equitable indemnity because, "[a]lthough in some circumstances the same act may support both contract and tort liability, [the California Supreme Court] held that 'breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law.'"  Tesoro Ref. & Mktg. Co. LLC v. Pac. Gas & Elec. Co., Civ. No. 14-00930 JCS, 2014 WL 4364393, at *4 (N.D. Cal. Aug. 29,

---

[3]    The exceptions apply to vicarious liability, strict liability, and implied contractual indemnity.  See BFGC, 119 Cal App. 4th at 852.

1  2014) (quoting <u>Erlich v. Menezes</u>, 21 Cal. 4th 543, 551-52

2  (1999)).  For example, breach of contract may also give rise to

3  liability in tort where

> (1) the breach is accompanied by a traditional common law
> tort, such as fraud or conversion; (2) the means used to
> breach the contract are tortious, involving deceit or undue
> coercion or; (3) one party intentionally breaches the
> contract intending or knowing that such a breach will cause
> severe, unmitigable harm in the form of mental anguish,
> personal hardship, or substantial consequential damages.

9  <u>Erlich</u>, 21 Cal. 4th at 551-52.  However, "mere negligent breach

10  of contract" is not sufficient to impose tort liability under

11  California law.  <u>Id.</u>; <u>see also</u> <u>Tesoro</u>, 2014 WL 4364393, at *4-5

12  (rejecting the argument that "equitable indemnity is appropriate

13  for negligent performance of contractual obligations" under

14  California law).

15        Pallets Unlimited's third-party complaint appears to

16  allege that OHL owed Starbucks a duty of care regarding the

17  storage conditions of the pallets, but it leaves the source of

18  this duty ambiguous.  In particular, it makes two allegations in

19  an effort to support a duty of care as between OHL and Starbucks.

20  First, it alleges that "OHL had a contract with [Starbucks]

21  whereby OHL agreed to store the wooden pallets at issue . . . at

22  the [warehouse]."[4]  (Pallets Compl. ¶ 11.)  And second, it

23  alleges that "OHL was responsible for ensuring that the wooden

24  pallets and coffee beans were properly stored and protected from

25        [4]     As explained above, the court does not consider the
26  specific terms of this alleged contract.  It only assumes the
   truth of this allegation on its face--that is, it assumes that
27  some contractual relationship existed between OHL and Starbucks
   with regard to storage of the wooden pallets at issue--as it must
28  for purposes of this motion.  <u>See</u> <u>Scheuer</u>, 416 U.S. at 236.

the elements such that they would not develop any mold," (id. ¶ 13.), and through its "negligence or fault," allowed mold to develop, (id. ¶¶ 20, 22).

With regard to the alleged "contract . . . to store the wooden pallets at issue," (id. ¶ 11.), the third-party complaint describes a contractual duty, not a duty "sounding in tort." Because California law does not recognize claims of equitable indemnity premised on a contractual duty, the third-party complaint does not state a claim for indemnity upon which relief can be granted on that ground.  See BFGC Architects, 119 Cal. App. 4th at 852-53; Stop Loss, 143 Cal. App. 4th at 1040-41.

Setting the allegation of a contract aside, nothing in Pallets Unlimited's pleading supports any viable theory that OHL owed and breached a duty to Starbucks in tort.  The allegation that "OHL was responsible for ensuring that the wooden pallets and coffee beans were properly stored and protected from the elements" is a conclusory allegation not entitled to deference under Iqbal.  See 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  The same is true of the allegation that OHL was "negligent" or at "fault."  Neither allegation contains facts that might aid the court in uncovering a duty owed by OHL to Starbucks.  Pallets Unlimited thus fails to allege any facts allowing this court to identify the source for any such duty in tort.

The court finds this case comparable to the recent situation faced by Magistrate Judge Spero in Tesoro.  See Tesoro, 2014 WL 4364393.  In Tesoro, underlying plaintiff Tesoro Refining & Marketing Company LLC ("Tesoro") sued Pacific Gas and Electric

1    Company ("PG & E") after a loss of electrical power to its

2    refinery forced a temporarily shut down.  Id. at *1.  PG & E in

3    turn sued Foster Wheeler Martinez, Inc. and Martinez Cogen

4    Limited Partnership (collectively, "FWM"), which also provided

5    electricity to Tesoro's refinery, for equitable indemnity.  Id.

6    FWM argued that equitable indemnity was not available because (1)

7    a contract between FWM and Tesoro absolved it of liability to

8    Tesoro and (2) PG & E had not adequately alleged that FWM was

9    liable to Tesoro in tort.  After concluding PG & E could not base

10   its claim upon the contract, id. at *3-5, the court set aside the

11   existence of the contract and surveyed California law for any

12   "independent tort duty" upon which to base equitable indemnity,

13   id. at *5-6.  It concluded that California law afforded no basis

14   in negligence for a duty in these circumstances.  Id. (citing

15   Cal. Civ. Code § 1714(a); Langley v. Pac. Gas & Elec. Co., 41

16   Cal. 2d 655, 660 (1953)).  Pallets Unlimited fails to point to

17   any source not considered in Tesoro.  (See Pallets's Opp'n at 11-

18   12.)

19        While some set of facts may allow Pallets Unlimited to

20   show that OHL's actions at the facility give rise to an

21   independent tort or even "both contract and tort liability," id.

22   at *4, it has not done so on the facts alleged.  That is, there

23   is no "joint legal obligation" or basis for "joint and several

24   liability" to Starbucks in these allegations.  See Prince, 5 Cal.

25   4th at 1158; Stop Loss, 143 Cal. App. 4th at 1040.  Accordingly,

26   the court will grant OHL's motion to dismiss these claims.

27   IV.  Pallets Unlimited's Negligence Claim

28        To state a claim for negligence under California law, a

11

1   plaintiff must allege duty, breach, causation, and damages.

2   <u>Conroy v. Regents of Univ. of Cal.</u>, 45 Cal. 4th 1244, 1250

3   (2009).  "[T]he threshold element of a cause of action for

4   negligence is the existence of a duty to use due care toward an

5   interest of another . . . .  Whether this essential prerequisite

6   has been satisfied in a particular case is a question of law."

7   <u>Glenn K. Jackson, Inc. v. Roe</u>, 273 F.3d 1192, 1196-97 (9th Cir.

8   2001) (quoting <u>Adelman v. Associated International Insurance Co.</u>,

9   90 Cal. App. 4th 352, 360 (2001)).

10       Because the court need not simply accept "a conclusory

11   assertion that [OHL] 'owed a duty of care,'" <u>see</u> <u>Fimbres v.</u>

12   <u>Chapel Mortgage Corp.</u>, Civ. No. 09-0886 IEG POR, 2009 WL 4163332,

13   at *7 (S.D. Cal. Nov. 20, 2009) (citing <u>Iqbal</u>, 556 U.S. 662.), it

14   must determine whether Pallets Unlimited alleges facts sufficient

15   to establish that OHL actually owed it a duty.  Pallets Unlimited

16   alleges two possible duties on which it predicates its negligence

17   claim: (1) a general duty of care owed by all owners of property-

18   -sometimes called "premises liability"--and (2) a duty to notify.

19       A.   <u>Pallets Unlimited Fails to Allege Facts Supporting</u>

20   <u>Premises Liability</u>

21       Pallets Unlimited alleges that "OHL owed a duty . . .

22   to store the coffee beans and pallets at issue at its [warehouse]

23   at or above the standard of care in the industry, which includes

24   storing them in such a way that mold would not develop . . ."

25   (Pallets Compl. ¶ 18.)  This duty arises, it contends, from

26   "premises liability" faced by all property owners in California.

27   (<u>See</u> Pallets's Opp'n at 10.)  And as a result of OHL's breach of

28   this duty, Pallets Unlimited alleges that it "suffered damages

including, but not limited to, potential liability to

[Starbucks]."  (Pallets Compl. ¶ 18).

California Civil Code section 1714(a) provides, in

part:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.

Cal. Civ. Code § 1714(a); see also Cabral v. Ralphs Grocery Co.,

51 Cal. 4th 764, 771 (2011) ("The general rule in California is

that '[e]veryone is responsible . . . for an injury occasioned to

another by his or her want of ordinary care or skill in the

management of his or her property or person.'" (quoting Cal. Civ.

Code § 1714(a))).  Courts have understood this subsection to

impose a "duty to use ordinary care," which makes an individual

"liable for injuries caused by his failure to exercise reasonable

care in the circumstances."  Cabral, 51 Cal. 4th at 771 (quoting

Parsons v. Crown Disposal Co., 15 Cal. 4th 456, 472 (1997)).

"Premises liability" is generally invoked for the idea

that landowners or possessors have a duty to avoid subjecting

others to a risk of bodily injury or property damage.  See, e.g.,

Brooks v. Eugene Burger Mgmt. Corp., 215 Cal. App. 3d 1611, 1619-

24 (5th Dist. 1989) (involving bodily injury to a child allegedly

caused by inadequate fencing around a roadway); Wilson v. Rancho

Sespe, 207 Cal. App. 2d 10, 17 (2d Dist. 1962) (stating that

premises liability "is applicable also with respect to liability

for damage to property"); see also Cal. Civ. Prac. Torts § 16:1

("The term 'premises liability' refers to the liability of

13

1  certain persons for injuries and damages to others arising from

2  the ownership or possession of real property.").

3        However, Pallets Unlimited does not allege injury to

4  its person or property.  In fact, it does not allege ownership

5  over the wooden pallets at issue while they were stored at OHL's

6  warehouse.[5]  It repeatedly alleges that the pallets were

7  "constructed by" Pallets Unlimited, (Pallets Compl. ¶¶ 8-9, 11,

8  13-14, 18), but makes no mention of whether it retained ownership

9  of the pallets or transferred them to Starbucks upon delivery.

10        Moreover, and perhaps more tellingly, Pallets Unlimited

11  does not allege that it suffered damages in the form of harm to

12  its pallets.  It alleges damages solely in the form of "potential

13  liability" to Starbucks, (id. ¶ 18), which would presumably

14  consist of a money judgment against it, as well as "damages

15  relating to attorney's fees and costs of suit herein," (id.

16  ¶ 17).  Any duty allegedly owed to Pallets Unlimited is thus

17  better understood as a duty to protect it from the prospect of

18  purely economic loss it now faces as a result of Starbucks's

19  claims against it.

20        Pallets Unlimited has not provided, and the court

21  cannot find, any basis in California law for such a duty.[6]  If

22        [5]  Pallets Unlimited states in its opposition brief that

23  OHL breached its duty as a premises owner "to ensure that Pallets
   Unlimited's wooden pallets and Starbuck's [sic] coffee beans"

24  were properly stored.  (Pallets's Opp'n at 9.)  While this could
   be construed as a statement of ownership, the court may not

25  consider any material other than the challenged pleadings for
   purposes of this motion, see Arpin v. Santa Clara Valley Transp.

26  Agency, 261 F.3d 912, 925 (9th Cir. 2001), and no similar

27  allegations appear in Pallets Unlimited's complaint.

28        [6]  During oral argument, Pallets Unlimited points to

14

1   anything, California law appears to point in the opposite

2   direction.  For instance, in Quelimane Co. v. Stewart Title

3   Guaranty Co., the California Supreme Court stated that

> In the business arena it would be unprecedented to impose a
> duty on one actor to operate its business in a manner that
> would ensure the financial success of transactions between
> third parties.  With rare exceptions, a business entity has
> no duty to prevent financial loss to others with whom it
> deals directly.  A fortiori, it has no greater duty to
> prevent financial losses to third parties who may be
> affected by its operations.

9   19 Cal. 4th 26, 59 (1998) (considering whether CPA auditors' duty

10  of care in the preparation of an independent audit of a client's

11  financial statements extends to persons other than the client);

12  see also Glenn K. Jackson Inc., 273 F.3d at 1196-99 (surveying

13  California law on the existence of a legal duty of one party to

14  another in the absence of privity of contract between them).

15          In fact, a California Court of Appeal recently rejected

16  a similar attempt to raise a negligence claim "through the

17  backdoor."[7]  Mega RV Corp. v. HWH Corp., 225 Cal. App. 4th 1318,

18  1338 (4th Dist. 2014).  In Mega RV Corp., the owners of a

19  motorhome sued both the manufacturer of an allegedly defective

20  Campbell v. Ford Motor Co., 206 Cal. App. 4th 15 (2012), for

21  support.  The court finds no support for its position in
    Campbell.  In fact, Campbell declined to find a duty in the

22  circumstances of that case, holding that "a property owner has no
    duty to protect family members of workers on its premises from

23  secondary exposure to asbestos used during the course of the
    property owner's business."  Id. at 34.

24

25          [7]   The court also noted that the claim of negligence it
    analyzed arose "in an indemnity cause of action . . . in a case

26  in which there was nothing to indemnify" because the other
    defendant had settled with the underlying plaintiff.  Mega RV

27  Corp., 225 Cal. App. 4th at 1338 n.15.  Pallets Unlimited's claim
    can be construed as a similar tactic, attempting to salvage its

28  indemnity claim using allegations of negligence.

1    hydraulic part and a company that provided ineffective repair
2    services.  Id. at 1322-24.  The manufacturer filed a cross-
3    complaint against the repairer for negligence, equitable
4    indemnity, and declaratory relief--the same claims at issue here.
5    Id. at 1324.  Also like here, the manufacturer predicated its
6    claim of negligence on an alleged duty that the repairer owed to
7    it and breached while servicing the owner's motorhome.  Id. at
8    1338.

9           The court rejected this position "as a matter of law"
10   because "[the manufacturer] did not suffer personal injury or
11   injury to other property as a result of [the repairer's] alleged
12   tort."  Id. at 1338.  Like Pallets Unlimited, the manufacturer
13   only asserted that it "suffered consequential economic damages"
14   by being forced to defend against the owner's claim.  Id.;(see
15   Pallets's Compl. ¶ 18).  No previously recognized tort existed
16   under those circumstances, "where the wrong has resulted only in
17   economic loss rather than damage to person or property."  Mega RV
18   Corp., 225 Cal. App. 4th at 1338 (citing Robinson Helicopter Co.,
19   Inc. v. Dana Corp., 34 Cal. 4th 979, 988-993 (2004) (discussing
20   tort claims for economic loss generally)).  And the court
21   declined to create one.  Id. at 1340-42 (applying the six factors
22   from J'Aire Corp. v. Gregory, 24 Cal. 3d 799 (1979)).

23          Similarly, this court concludes there is no basis in
24   California law or in the facts alleged by Pallets Unlimited for
25   such a duty.

26     B.   Pallets Unlimited Fails to Allege Facts Supporting a
27   Duty to Notify

28          Pallets Unlimited further alleges that OHL owed a duty

16

1    to notify it "of any specifications required of the pallets that

2    are unique to the pallets ordered by Starbucks," such as a

3    limited moisture content.  (Pallets Compl. ¶ 17.)  Pallets

4    Unlimited makes no mention of this allegation in its opposition

5    brief, raising the possibility that it abandons this position.

6    The court thus gives only brief consideration to this theory.

7    See Conservation Force v. Salazar, 677 F. Supp. 2d 1203, 1211

8    (N.D. Cal. 2009) (offering only brief consideration to a claim

9    "[w]here plaintiffs fail to provide a defense for a claim in

10   opposition") (citing Locricchio v. Office of U.S. Trustee, 313

11   Fed. Appx. 51, 52 (9th Cir. 2009)).

12            "A duty to disclose facts arises only when the parties

13   are in a relationship that gives rise to the duty, such as

14   'seller and buyer, employer and prospective employee, doctor and

15   patient, or parties entering into any kind of contractual

16   agreement.'"  Shin v. Kong, 80 Cal. App. 4th 498, 509 (1st Dist.

17   2000) (citing Wilkins v. Nat'l Broad. Co., 71 Cal. App. 4th 1066,

18   1082 (2d Dist. 1999)).  For example, California law imposes on

19   real estate agents an affirmative duty to disclose certain

20   information to those who "enter into a discussion with a real

21   estate agent regarding a real estate transaction" even in the

22   absence of a contract between them.  See Cal. Civ. Code

23   § 2079.16.

24            Pallets Unlimited's complaint fails to allege facts

25   supporting a special relationship between it and OHL.  Its states

26   only that a duty to disclose "was owed to [it] by OHL

27   individually and as an agent of [Starbucks]."  (Pallets Compl. ¶

28   17.)  Even assuming that OHL was an agent of Starbucks, however,

1   this allegation asserts a relationship between OHL and Starbucks,

2   not between OHL and Pallets Unlimited.  <u>See</u> <u>Shin v. Kong</u>, 80 Cal.

3   App. 4th 498 (2000) ("[A] plaintiff's action must be founded on a

4   duty owed to the plaintiff; not a duty owed only to some other

5   person. . . . 'Negligence in the air, so to speak, will not do.'"

6   (quoting Prosser & Keeton, Torts § 53 (5th ed. 1984))).  Absent

7   alleged facts that support some kind of special relationship

8   between Pallets Unlimited and OHL, the court cannot conclude that

9   OHL owed a duty to disclose.

10          Accordingly, because Pallets Unlimited fails to allege

11  facts that support a duty of care owed to it by OHL, the court

12  must grant OHL's motion to dismiss this claim.

13  V.   <u>Pallets Unlimited's Claim for Declaratory Relief</u>

14          A court may grant declaratory relief where there is "a

15  case of actual controversy within its jurisdiction," subject to

16  certain exceptions.  28 U.S.C. § 2201(a).  The court may "declare

17  the rights and other legal relations of any interested party

18  seeking such declaration, whether or not further relief is or

19  could be sought."  <u>Id.</u>

20          However, "[c]laims for declaratory relief are not

21  independent causes of action, but rather the ultimate prayer for

22  relief."  <u>Bates v. Suntrust Mortgage, Inc.</u>, Civ. No. 2:13-01402

23  TLN DA, 2013 WL 6491528, at *4 (E.D. Cal. Dec. 10, 2013) (Nunley,

24  J.).  "A plaintiff is not entitled to such relief without a

25  viable underlying claim, so when the underlying claim is

26  dismissed, the declaratory relief cause of action must be

27  dismissed as well."  <u>Id.</u>; <u>Allied Prop. & Cas. Ins. Co. v. Dick</u>

28  <u>Harris, Inc.</u>, Civ. No. 2:13-00325 WBS, 2013 WL 2145961, at *7

1    (E.D. Cal. May 15, 2013) (dismissing a claim for declaratory

2    relief because plaintiff could not state any other claim).

3              Accordingly, because Pallets Unlimited has not stated a

4    claim for relief against OHL, its request for declaratory

5    judgment must also be dismissed.

6              IT IS THEREFORE ORDERED that third-party defendant

7    Ozburn-Hessey Logistics's motion to dismiss be, and the same

8    hereby is, GRANTED.

9              Pallets Unlimited has twenty days from the date this

10   Order is signed to file an amended third-party complaint, if it

11   can do so consistent with this Order.

12   Dated:  November 4, 2014

13

14                         WILLIAM B. SHUBB
                           UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28