1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10
                              ----oo0oo----
11

12   STARBUCKS CORPORATION, a
     corporation,                          Civ. No. 2:13-1754 WBS CKD
13
                  Plaintiff,               ORDER RE: REQUESTS TO SEAL
14                                         DOCUMENTS
          v.
15
     AMCOR PACKAGING DISTRIBUTION,
16   a corporation; AMCOR
     PACKAGING (USA), INC., a
17   corporation; and PALLETS
     UNLIMITED, LLC, a limited
18   liability company,

19                Defendants,

20        v.

21   OZBURN-HESSEY LOGISTICS, a
     corporation,
22
               Third-Party Defendant.
23

24
                              ----oo0oo----
25

26        Plaintiff Starbucks Corporation ("Starbucks") brought

27   this action against defendants Amcor Packaging Distribution,

28   Amcor Packaging (USA), Inc., and Pallets Unlimited, LLC ("Pallets

                                    1

1   Unlimited") after discovering mold on its unroasted green coffee

2   that was stored and shipped on wooden pallets provided by

3   defendants.  (Docket No. 1.)  Starbucks alleges that defendants

4   supplied it with defective pallets that caused the mold.  (Id.)

5   Pallets Unlimited filed a third-party complaint against Ozburn-

6   Hessey Logistics ("OHL"), the owner and operator of a warehouse

7   located in Sparks, Nevada ("Sparks facility") where Starbucks'

8   unroasted green coffee and the wooden pallets were stored before

9   they were shipped to Starbucks' roasting plants.  (First Am.

10   Third-Party Compl. ¶¶ 7-10 (Docket No. 46).)

11        On March 8, 2016, OHL moved for summary judgment on

12   Pallets Unlimited's sole claim for equitable indemnity.  (Docket

13   No. 104.)  In support of the motion, OHL included a redacted

14   version of the written contract between OHL and Starbucks

15   detailing OHL's duties regarding the storage of Starbucks' coffee

16   at its warehouses (the "Agreement").  (Johnson Decl. ¶¶ 4-6, Exs.

17   A-C ("Ag.") (Docket Nos. 107-1 to 107-4).)

18        The Agreement is comprised of the Master Warehouse-

19   Logistics Agreement, Nashville Distribution Center supplement

20   regarding OHL's facility in Nashville, Tennessee ("Nashville

21   Supplement"), Sparks Green Bean Warehouse supplement regarding

22   OHL's Sparks facility in Sparks, Nevada ("Sparks Supplement"),

23   and an amendment to the Sparks Supplement where OHL agrees to

24   store certain Starbucks finished goods at its Sparks facility in

25   addition to green coffee.  To date, no protective order has

26   issued in this case concerning the Agreement.

27        A party seeking to seal a judicial record bears the

28   burden of overcoming a strong presumption in favor of public

1   access.  <u>Kamakana v. City & County of Honolulu</u>, 447 F.3d 1172,

2   1178 (9th Cir. 2006).  The party must "articulate compelling

3   reasons supported by specific factual findings that outweigh the

4   general history of access and the public policies favoring

5   disclosure, such as the public interest in understanding the

6   judicial process."  <u>Id.</u> at 1178-79 (citation omitted).

7            "[T]he strong presumption of access to judicial records

8   applies fully to dispositive pleadings, including motions for

9   summary judgment and related attachments . . . because the

10  resolution of a dispute on the merits, whether by trial or

11  summary judgment, is at the heart of the interest in ensuring the

12  'public's understanding of the judicial process and of

13  significant public events.'"  <u>Id.</u> at 1179 (citation omitted).  In

14  ruling on a motion to seal, notwithstanding the other party's

15  failure to object, the court must balance the competing interests

16  of the public and the party seeking to keep the records secret.

17  <u>Id.</u>

18  I.  <u>OHL's Request to Seal or Redact the Agreement</u>

19            OHL states it filed the redacted version of the

20  Agreement at Starbucks' request because the document contains

21  sensitive business information that is subject to a

22  confidentiality agreement between OHL and Starbucks.  (Docket No.

23  108 at 2; Shipley Decl. ¶ 4 (Docket No. 109).)  There is no

24  explanation why the confidentiality agreement contained in the

25  Sparks Supplement has been fully redacted, but an exactly

26  identical confidentiality agreement in the Nashville Supplement

27  has been filed unredacted.  (<u>Compare</u> Ag. Ex. A at OHL0028, <u>with</u>

28  <u>id.</u> Ex. B at OHL0045.)  Both confidentiality agreements also

3

1  contain provisions titled "EXCEPTIONS TO CONFIDENTIAL

2  INFORMATION," which provide that information is not confidential

3  if it must be disclosed "pursuant to judicial order or other

4  compulsion of law."  (E.g., id. Ex. A at OHL0028.)

5          This court has previously pointed out that a private

6  confidentiality agreement does not per se constitute a compelling

7  reason to seal or redact a record that outweighs the interests of

8  public disclosure and access.  (E.g., Oct. 8, 2014 Order at 2

9  (Docket No. 33)); Sept. 3, 2015 Order at 3, Foster Poultry Farms,

10  Inc. v. Certain Underwriters at Lloyd's, London, Civ. No. 1:14-

11  953; Sept. 18, 2015 Order at 2, Rosales v. City of Chico, Civ.

12  No. 2:14-2152.  OHL does not specifically identify the provisions

13  it asserts constitute sensitive business information or explain

14  why that information is sensitive and should be sealed or

15  redacted from the public record.  Absent any guidance, the court

16  cannot find a compelling reason to seal the document.

17  II. Starbucks' Request to Seal or Redact the Agreement

18          Starbucks had filed a request to seal or redact the

19  Agreement in connection with OHL's motion to dismiss Pallet

20  Unlimited's original third-party complaint.  (Docket No. 42; see

21  Docket Nos. 29-31, 33.)  Starbucks argued that the Agreement

22  contained "trade secret and proprietary information" and attached

23  a redacted version it claimed "eliminate[d] the sensitive and

24  confidential information of concern."  (Ferrell Decl. ¶ 5 (Docket

25  No. 42-1); Kirsch Decl. Ex. A (Docket Nos. 42-2 to 42-4).)  The

26  court, however, declined to consider the Agreement altogether for

27  purposes of OHL's motion to dismiss.  (See Nov. 5, 2014 Order at

28  7 (Docket No. 44).)

1    Starbucks' previously-filed version of the Agreement

2  had redacted the entirety of the Sparks Supplement based upon

3  Starbucks' assertions it contained trade secrets and sensitive

4  information that, if disclosed, presented a security risk and

5  commercial disadvantage to Starbucks.  (See Kirsch Decl. Ex. A;

6  Ferrell Decl. ¶¶ 3-4.)  But Starbucks approved the version filed

7  here in support of OHL's motion for summary judgment as having

8  "been redacted of such assertedly confidential or proprietary

9  information"; yet this version discloses the majority of the

10  Sparks Supplement.  (Shipley Decl. ¶ 4; see Ag. Ex. B.)  This

11  inconsistency suggests that Starbucks' assertions about the

12  sensitive nature of the information contained in the Agreement

13  were not entirely accurate.

14    Starbucks argued that disclosing intake procedures and

15  security services at its storage facilities "present[ed] very

16  real security risks for Starbucks facilities and products."

17  (Ferrell Decl. ¶ 3.)  Yet the version Starbucks approved here

18  describes its intake procedures at length, (Ag. Ex. B at OHL0053–

19  57), and details the physical requirements of the storage

20  facility and surrounding grounds, (e.g., id. at OHL0049 (facility

21  floors must be "sealed concrete, minimum 6" thick" and exterior

22  doors "fitted with tight seals")).  Starbucks also discloses the

23  security services OHL provided, (e.g., id. at OHL0054 ("assist

24  fully with cargo security investigations involving theft,

25  contraband, contamination, mismatched/missing seals")), and

26  provides the types of security credentials required at OHL's

27  facilities, (e.g., id. Ex. A § 3.4 (granting "Starbucks 24-hour

28  access, via a security password, to its computerized inventory

1    and distribution software system")).  Starbucks had additionally

2    contended that the "mere disclosure of the location of such large

3    amounts of Starbucks green coffee presents a commercial risk to

4    Starbucks which cannot be quantified." (Ferrell Decl. ¶ 3.)  The

5    version approved here, however, discloses the address of the

6    Sparks facility.  (Ag. Ex. B at OHL0042.)

7         Starbucks also argued that information such as

8    temperature specifications and product handling requirements were

9    trade secrets because they took "years of experience to develop

10   and many hours to negotiate." (Ferrell Decl. ¶ 4.)  It strains

11   reason to believe this information constitutes sensitive business

12   information given that the version Starbucks approved for public

13   view reveals its temperature specifications, (Ag. Ex. B at

14   OHL0050 ("storage temperature of 45-85 degrees Fahrenheit and a

15   relative humidity of 50-55%")), and describes its product

16   handling requirements in full detail, (e.g., id. at OHL0055-61

17   (requiring OHL to palletize bags of coffee on pre-weighed pallet

18   boards, weigh the full pallets, and receive into inventory; sew

19   torn bags of coffee on the spot using a large needle and twine;

20   record product item numbers, devanning dates, bag counts, lot

21   codes, and weights on all pallet tags; set aside stained bags of

22   coffee into a reconditioning area containing three clean burlap

23   sacks, "two dustpans, a utility knife, a sack sewing needle,

24   twine, and a tare scale"; cut stained bags in crisscross manner,

25   peel back, and use dustpans to isolate "moldy or adulterated

26   coffee from the good coffee by creating a barrier between the

27   two"; remove adulterated coffee and the outer layer of good

28   coffee, place good coffee into clean bags, and send samples from

1   bags to Starbucks; rotate all products first-in-first-out).)

2          Accordingly, because the above facts demonstrate that

3   Starbucks' assertions regarding the sensitive nature of the

4   information in the Agreement are not entirely accurate, the court

5   will deny Starbucks' request to seal or redact the Agreement.

6   III. <u>Relevance of the Agreement to Motion for Summary Judgment</u>

7          Once a matter is brought to the court for resolution,

8   it is a public matter.  <u>M.P. ex rel. Provins v. Lowe's Cos.</u>, Civ.

9   No. 2:11-1985 GEB CKD, 2012 WL 1574801, at *2 (E.D. Cal. May 3,

10  2012).  OHL asserts that the redactions in the version it filed

11  "do not include any of the contractual terms cited or relied upon

12  in OHL's motion [for summary judgment]" and "have no apparent

13  bearing on the merits [of] OHL's motion or this action."

14  (Shipley Decl. ¶ 5.)

15         The court disagrees.  OHL argues in its motion that "no

16  provision of the [Agreement] required OHL to physically inspect

17  incoming pallets."  (Mot. at 5 (Docket No. 104).)  A considerable

18  amount of information bearing on that issue is redacted from the

19  Agreement.  (<u>E.g.</u>, Ag. Ex. A at OHL0030-31, Ex. B at OHL0062-

20  65).)  OHL also contends in its motion that its employees ensured

21  "coffee samples were shipped to Starbucks in a timely manner."

22  (Mot. at 14.)  The provisions governing OHL's green coffee

23  sampling and outbound shipping procedures are also redacted here.

24  (<u>E.g.</u>, Ag. Ex. A at OHL0030-31, Ex. B at OHL0058-60.)  OHL

25  further argues that it "minimized the likelihood of a problem

26  arising with any of the Starbucks property stored in its

27  facility" by following standard operating procedures.  (Mot. at

28  14.)  Yet substantial portions of those standard operating

1  procedures are redacted from the Agreement.  (E.g., Ag. Ex. A at

2  OHL0030-33, Ex. B at OHL0047-65.)

3       OHL's motion for summary judgment also puts into issue

4  Pallets Unlimited's contentions that OHL's failure to comply with

5  operating procedures and meet Starbucks' minimum performance

6  standards constitute evidence of OHL's breach of its duty to act

7  as a reasonable warehouse services provider.  (Mot. at 12 n.6;

8  e.g., App. of Evid. in Supp. of OHL's Mot. ("App. Evid.") Ex. L

9  at 7 (indicating that OHL failed several Starbucks' compliance

10 sections) (Docket No. 107-14).)  The methods by which Starbucks

11 measured OHL's performance and determined whether it met minimum

12 acceptable levels are also redacted.  (E.g., Ag. Ex. A at

13 OHL0034-39, Ex. B at OHL0066-69.)  Pallets Unlimited further

14 contends that Starbucks ultimately canceled the Agreement with

15 OHL because OHL had stored improper products near the green

16 coffee.  (Mot. Ex. R at 7 (Docket No. 107-20).)  An entire

17 section of the Sparks Supplement amendment regarding OHL's

18 storage of Starbucks' finished goods has been redacted.  (Ag. Ex.

19 C at OHL0004.)

20      Furthermore, the court has previously indicated that

21 the Agreement is relevant to Pallets Unlimited's equitable

22 indemnity claim.  (E.g., Tr. Hr'g at 5:15-17, Nov. 3, 2014

23 (Docket No. 45) ("[W]e don't know that [OHL's duty of care]

24 arises from the contract because we have to look to the contract

25 to see whether it does."), 21:5-7 ("I can't get away from the

26 fact that I think the contract has some relevant provisions that

27 would bear upon my decision on this motion.").  It thus appears

28 that Starbucks, in bringing this action, and OHL, in bringing its

1    pending motion for summary judgment, have waived any privilege

2    that may have existed in the Agreement.  Accordingly, the court

3    will deny their requests to seal or redact the Agreement.

4           IT IS THEREFORE ORDERED that plaintiff Starbucks

5    Corporation's and cross-defendant Ozburn-Hessey Logistics'

6    requests to seal or redact the Agreement, (Docket Nos. 42, 108),

7    be, and the same hereby, are DENIED.

8           IT IS FURTHER ORDERED that Exhibits A through C

9    submitted in support of Ozburn-Hessey Logistics' motion for

10   summary judgment, (Docket Nos. 107-2 to 107-4), and all other

11   written materials in this action shall not be filed under seal.

12          IT IS SO ORDERED.

13   Dated:  March 18, 2016

14                                   WILLIAM B. SHUBB
                                     UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28